## UNITED STATES BANKRUPTCY COURT DISTRICT OF COLORADO
### The Honorable Joseph G. Rosania

| | | |
|---|---|---|
| In re: | ) | |
| Chee Wei Fong | ) | Case No. 20-16813 JGR |
| Debtor | ) | Chapter 11 Subchapter V |

## MOTION FOR A DETERMINATION AND ORDER THAT 11 U.S. C. § 1191(b) MAY NOT BE RETROSPECTIVELY APPLIED TO ANY CREDITOR WHOSE CLAIMS ACCRUED PRIOR TO AUGUST 23, 2019

Angry Beavers, LLC, Edward Klen and Stephen Klen, Creditors and parties-in-interest, (hereinafter, 'Creditors'), through counsel, respectfully request that this Honorable Court find and Order that 11 U.S.C. § 1191, the subchapter V "cram down plan" may not, consistent with Fifth Amendment protections, be retrospectively applied to any unsecured creditor's claim which accrued on or before August 23, 2019. As grounds therefore, Creditors state:

### FACTUAL BASIS

In 2019, Congress enacted the Small Business Reorganization Act of 2019, 11 U.S.C. § 1181-1195, amending Chapter 11 of Title 11, U.S.C. to include Subchapter V, Small Business Debtor Reorganization. Public Law 116-54 was signed into law August 23, 2019, effective 180 days after enactment. Among its provisions, Section 1191(b) provides that a plan filed under Subchapter V "may be confirmed only if all of the requirements of Section 1129(a) other than paragraph (15) of that section, of this title are met."

Section 1129, 11 U.S.C., Confirmation of plan, paragraph 15, provides:

(15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—

(A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides

Subchapter V effectively rescinds the absolute priority rule, in a cramdown plan, and permits an equity-holding debtor to retain his or her interest in the business even when the plan does not pay unsecured claims.

## ARGUMENT

I.   **SECTION 1191 WAS NOT INTENDED TO, AND MAY NOT, BE RETROSPECTIVELY APPLIED TO CREDITORS WHOSE RIGHTS TO ABSOLUTE PRIORITY MATURED PRIOR TO AUGUST 23, 2019.**

For unsecured creditors whose rights had matured prior to August 23, 2019, retrospective application of Section 1191, applied to rescission of the absolute priority rule, would constitute a taking of property, in violation of the Fifth Amendment, and cannot have been Congress's intent.

In 1939, the United States Supreme Court held that a "fair and equitable plan" under the existing Bankruptcy Act (1898) required compliance with a rule of "full and absolute priority." *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 114 (1939). The rule was affirmed in 2017, when the Court held that bankruptcy courts may not approve structured dismissals which violate the ordinary priority rules without the consent of affected creditors. *Czyzewski v. Jevic Holding Corp.,* 137 S.Ct. 973, 983-84 (2017). The Court noted that deviations from the priority rules are "potentially serious", because they include "departure from the protections Congress granted particular classes of creditors…changes in the bargaining power

of different classes of creditors even in bankruptcies that do not end in structured dismissals…risks of collusion, *i.e.,* senior secured creditors and general unsecured creditors teaming up to squeeze out priority unsecured creditors…and…making settlement more difficult to achieve." *Id.* at 986-87.

The absolute priority rule was created by Congress, and Congress has the power to rescind it, but may not do so contrary to the Fifth Amendment. "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment." *Louisville Joint State Land Bank v. Radford,* 295 U.S. 555, 589 (1935). The *Radford* Court held the Frazier-Lemke Act which, in attempting to provide emergency relief to distressed farmers during the depression, unconstitutional as in violation of the Fifth Amendment by creating a substantial impairment to the rights of existing mortgage holders.

"But the effect of the Act here complained of is not the discharge of Radford's personal obligation. It is the taking of substantive rights in specific property acquired by the Bank prior to the Act." *Id.* at 590. To the argument that the crisis for farmers was sufficiently grave to permit Congress's exercise of the legislative power to mitigate it, the Court responded:

> For the Fifth Amendment commands that, however great the Nation's need, private property shall not be thus taken even for a wholly public use without just compensation. If the public interest requires, and permits, the taking of property of individual mortgagees in order to relieve the necessities of individual mortgagors, resort must be had to proceedings by eminent domain; so that, through taxation, the burden of the relief afforded in the public interest may be borne by the public.

*Id.* at 602. More recently, the Court considered the 1978 amendments to the Bankruptcy Code, in *United States v. Security Industrial Bank et al,* 459, U.S. 70 (1982), an appeal from the Tenth Circuit, consolidating seven cases in which debtors sought to avoid non-possessory, non-security purchase-money liens perfected before the date of the statutory enactments, by retrospective application of the amendment's changed provisions. The

bankruptcy courts in Colorado and Kansas had uniformly held that retrospective application of the law to vested interests would violate the Fifth Amendment, and the Tenth Circuit affirmed.

Holding that, "[n]o bankruptcy law shall be construed to eliminate property rights which existed before the law was enacted in the absence of an explicit command from Congress", the Court found it unnecessary to reach the Fifth Amendment taking. *Id.* at 81. If the amendments were not retrospectively applied, they were well within Congress's power to enact, and inoffensive to the Fifth Amendment.

The Fifth Amendment's Due Process and Just Compensation Clauses prohibit the taking of private property for public use without due process of law and just compensation. Contractual rights are constitutional "property", *U. S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 19 n.16 (1977), as are causes of action *Richards v. Jefferson County,* 517 U.S. 793, 804 (1996). The Creditors negotiated for, and secured, personal guarantees of their loans to the Debtor. Under the terms of the contracts, they have the right to sue the Debtor personally for any deficiency arising from the Happy Beavers, LLC (Case No. 20-14893), Gunsmoke, LLC (Case No. 20-15962), or Armed Beavers, LLC (Case No. -14963) Subchapter V plans, and under the absolute priority rule, to collect that deficiency prior to any equity-taking by the Debtor.

In this case, retrospective rescission of the absolute priority rule would create the constitutionally-offensive result of depriving creditors of vested property rights without compensation. A statute is never to be construed in a manner which would yield an unconstitutional result, if any other construction is possible.

> The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears an oath to uphold the Constitution.

4

*DeBartolo Corp. v. Florida Gulf Coast Trades Council,* 485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). *Accord*, *Burns v. United States*, 501 U.S. 129, 138 (1991); *Gollust v. Mendell*, 501 U.S. 115, 126 (1991).

Because Congress did not expressly state that the amendments were to be retrospectively applied, they must not be. "The presumption is very strong that a statute was not meant to act retrospectively, and it ought never too receive such a construction if it is susceptible of any other." *Id.* at 79-80 (quoting *United States ex rel. Struthers Wells Co.,* 209 U.S. 306, 314 (1908)).

## CONCLUSION

WHEREFORE, Creditors respectfully request that this Court determine and Order that 11 U.S.C. § 1191(b) may not be retrospectively applied to any creditor's claim which accrued prior to August 23, 2019.

DATED this 18th day of February, 2021.

LAW OFFICE OF INGRID J. DEFRANCO

BY:  *s/ Ingrid J. DeFranco*
Ingrid DeFranco, Esq.
Law Office of Ingrid J. DeFranco
P.O. Box 128
Brighton, Colorado 80601-0128
Ingrid.defranco@gmail.com

&
NEMIROW PEREZ, P.C
Nancy D. Miller
P.O. Box 1015
Boulder, CO 80306-1015
Phone: (303) 525-3196
Nmiller@nemirowperez.com
ATTORNEYS FOR ANGRY BEAVERS, LLC;

EDWARD KLEN; and STEPHEN KLEN

### CERTIFICATE OF SERVICE

I hereby certify that on this 18th  day of February, 2021, I caused a true and correct copy of the foregoing **MOTION FOR A DETERMINATION AND ORDER THAT 11 U.S. C. § 1191(b) MAY NOT BE RETROSPECTIVELY APPLIED TO ANY CREDITOR WHOSE CLAIM ACCRUED PRIOR TO AUGUST 23, 2019** to be served on the following via CM/ECF**:**

Debtor Chee Wei Fong
c/o Michael J. Guyerson
mike@kjblawoffice.com
Michael J. Guyerson
mike@kjblawoffice.com


Alison Goldenberg
Alison.goldenberg@usdoj.gov
US Trustee
USTPRegion19.DV.ECF@usdoj.gov

Joli A. Lofstedt
joli@jaltrustee.com

Michael C. Payne
mpayne@cp2law.com


Abbey Dreher
co.ecf@bdfgroup.com


*s/Ingrid J. DeFranco*